


**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CHARLES JENKINS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **vs.** | } | **CASE NO. 2:10-cv-1212-SLB** |
| | } | |
| **DIVERSIFIED COLLECTION SERVICES, INC.; and GREAT LAKES HIGHER EDUCATION GUARANTY CORPORATION,** | } | |
| | } | |
| **Defendants.** | } | |

**MEMORANDUM OPINION**

This case is before the court on plaintiff's Motion to Remand and to Voluntarily Dismiss any Fair Debt Collection Practices Act Claims. (Doc. 8.)[1] Defendants, Diversified Collection Services, Inc. and Great Lakes Higher Education Guaranty Corporation, oppose the Motion and, in response, have filed Defendants' Motion to Dismiss or in the Alternative Motion for Judgment on the Pleadings. (Doc. 10.)

On May 11, 2010, defendants removed case number CV-2010-900168.00 from the Bessemer Division of the Circuit Court of Jefferson County, Alabama, invoking federal question jurisdiction on the ground that the Complaint alleged violations of "state and federal acts protecting individuals . . . from collection agencies and companies." (Doc. 1

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

at ¶ 3 & Ex. A at ¶ 26.) In their Removal Notice, defendants asserted that the Complaint put defendants on notice of alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. (Doc. 1 at ¶ 10.)

Thereafter, on June 4, 2010, plaintiff Charles Jenkins ("Jenkins") filed a Motion to Remand and to voluntarily dismiss any FDCPA claims. (Doc. 8.) The Motion to Remand states in part:

> **The plaintiff hereby concedes that the defendants have not violated any portion of the FDCPA.**
>
> . . .
>
> **The plaintiff, based on the defendants' answer and the facts of this case, does not believe that the defendants have specifically violated any section of the FDCPA.** However, the defendants are guilty of the other state law claims alleged in the original complaint and since those claims are state related and do not seek relief above $75,000.00, this court lacks jurisdiction based on diversity.

(Doc. 8 at ¶¶ 3, 5, emphasis added.) Based on the bolded sections of plaintiff's Motion to Remand, quoted above, defendants moved the court to dismiss plaintiff's Complaint in its entirety. (*See* doc. 10, pp. 1-2.)

As set forth below, plaintiff's Motion to Remand and to Voluntarily Dismiss any Fair Debt Collection Practices Act Claims, (doc. 8), will be granted. Defendants' Motion to Dismiss or in the Alternative for Judgment on the Pleadings, (doc. 10), will be carried with the case for resolution by the state court.

## I. BACKGROUND

On April 7, 2010, Jenkins filed this action in state court against Defendants, each of which are foreign corporations conducting business in the State of Alabama and engaging in the practice of debt collection. (Doc. 1, Ex. A at ¶¶ 2-3.) Plaintiff also named fictitious party defendants, among them, "Fictitious Defendants G, H, and I, whether singular or plural, being those individuals or entities who violated the Fair Debt Collection Practices Act." (Doc. 1, Ex. A.) In his state-court Complaint, Jenkins asserts the following claims: Count One, Invasion of Privacy; Count Two, Intentional Infliction of Emotional Distress; Count Three, Extortion and Blackmail; Count Four, Misrepresentation and Fraud; and Count Five, Debt Collection Practices Violation and Defamation. (Doc. 1, Ex. A.)

The Complaint sets out the following factual allegations:

> 6. Charles Jenkins was stationed in Iraq during the first Iraqi War. The plaintiff served his country during George Herbert Walker Bush's term as President in the early 1990's.
>
> 7. Some time in approximately 2008, Mr. Jenkins was contacted by Great Lakes related to a student loan that was evidently borrowed by Mr. Jenkins' niece, Natasha Howard. The applications were made at a time when Mr. Jenkins was serving in the military. Mr. Jenkins informed the defendants that he was not responsible for the loans. He completed a police report, at their instruction, and signed several affidavits (four in total he believes) in which he notified them that he did not sign any application and that his niece or her mother, Luis Howard (who is Mr. Jenkins' sister), had evidently used his social security number to obtain the loan. The police report was prepared on November 7, 2008.

> 8. After providing the police report and the affidavit to the defendants, the plaintiff continued to receive letters and phone calls with requests for payment toward this loan. He continued to inform the defendants that he had nothing to do with this loan and was not responsible for paying for the loan.
>
> 9. Mr. Jenkins continued to receive requests from the defendants. He would not respond and would ignore them. When he did speak with anyone, he would let them know that he did not owe them anything. In January of 2010, the plaintiff received a letter from Great Lakes which basically accused him of lying in regard to the police report.
>
> 10. In February of 2010, the plaintiff attempted to obtain loans for personal reasons. These loan applications were rejected based in part on the poor credit wrongly reported against the plaintiff by the defendants.

(Doc. 1, Ex. A.)

Jenkins also alleges, in Count Three, that defendants undertook to extort sums of money from him by "threatening him with various actions." (*Id.* at ¶ 20.) In Count Four, Jenkins alleges that defendants led him to believe that as a result of his signing the affidavits and completing the police reports "he would not suffer more harassing or humiliating telephone calls or letters from the defendants." (*Id.* at ¶ 22.)

## II. DISCUSSION

### A. Plaintiff's Motion to Voluntarily Dismiss Any FDCPA Claims

As an initial matter, plaintiff moves the court for dismissal of "any claim related to the FDCPA," and seeks to preserve his state law claims. (Doc. 8 at ¶¶ 2-3.) "[W]hen a party seeks to dismiss one claim of a multi-claim action, the party should file a motion to amend the complaint under Rule 15(a)." *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1106 (11th Cir. 2004); *Boyce v. Augusta-Richmond County,* 111 F. Supp. 2d 1363,

1374 (S.D. Ga. 2000); *see Anderberg v. Masonite Corp.,* 176 F.R.D. 682, 686 (N.D. Ga. 1997) (treating the motion to dismiss a single claim as a motion to amend the complaint under Rule 15(a)). Since plaintiff does not seek to dismiss the entire action, the court will construe plaintiff's motion to voluntarily dismiss any FDCPA claims as a motion to amend.

Under Federal Rule of Civil Procedure 15(a)(2), a party must seek leave of the court, or obtain written consent of the adverse party, in order to amend a pleading after an adverse party, as here, has submitted a responsive pleading. Rule 15 states that "leave shall be freely given when justice so requires." The grant or denial of an opportunity to amend is within the discretion of the district court; however, "absent apparent or declared reasons – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendments, etc." – denial of a motion to amend is an abuse of discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see, e.g., McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 1999).

In this case, defendants agree that the FDCPA claim(s) should be dismissed, and offer no argument that leave to amend should not be granted on the basis of any of the factors set out in *Foman*. (Doc. 10, pp.1-2.) Therefore, the court finds that with respect to the dismissal of any FDCPA claims, plaintiff's Motion, (doc. 8), is due to be granted.

### B. Motion to Remand

"The dismissal of plaintiff's underlying federal question claim does not deprive the court of supplemental jurisdiction over the remaining state law claims." *Baggett v. First Nat'l Bank of Gainsville*, 117 F.3d 1342, 1352 (11th Cir. 1997); *Shelley v. City of Headland*, No. 1:09-CV-509-WKW [WO], 2009 WL 2171898, at *1 (M.D. Ala. July 21, 2009) ("[W]hen a plaintiff who filed in *state* court, after removal, amends a complaint to drop all federal claims, supplemental jurisdiction is not affected by the amendment.") (citation omitted). However, the district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 § 1367(c)(3); *e.g., Baggett*, 117 F.3d at 1352-53. "In making this decision, the court 'should take into account concerns of comity, judicial economy, convenience, fairness, and the like.'" *Shelley*, 2009 WL 2171898, at *2 (quoting *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1123 (11th Cir. 2005)). "When the balance of these factors indicates that a case properly belongs in any state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966)). It is also within the court's discretion to relinquish jurisdiction over the case by remanding it back to state court. *Id.* at 353 (noting that "even when the applicable

statute of limitations has not expired, a remand may best promote the values of economy, convenience, fairness and comity").

The Eleventh Circuit has held that where a "case was originally filed in state court and removed to federal court pursuant to 28 U.S.C. § 1441, if the district court declines to continue to exercise supplemental jurisdiction, [the] remaining claim[s] should be remanded to state court." *Cook*, 402 F.3d at 1123. Indeed, there is a presumption in favor of remanding state-law claims to state courts because "state courts, not federal courts, should be final arbiters of state law." *Ingram v. School Bd. Of Miami-Dade County*, 167 Fed. Appx. 107, 108 (11th Cir. 2006) (citing *Baggett*, 117 F.3d at 1353).

Defendants take the position that plaintiff's "dismiss[al] of FDCPA claims in favor of state-law torts, such as invasion of privacy and defamation, is a sign of forum shopping." (Doc. 10, p. 2.) However, defendants decline to "comment[] on whether such behavior should be condoned or allowed," and present no argument that plaintiff's alleged forum shopping motive precludes remand. (*Id.*) The court notes that "forum manipulation concerns are legitimate and serious" when a plaintiff dismisses the federal claims that were the basis for federal jurisdiction and moves to remand, however, such concerns do not impose a "blanket prohibition" on remand, where jurisdiction is discretionary. *Carnegie-Mellon Univ.*, 484 U.S. at 356 n.12. Any alleged manipulative tactics may be considered in determining whether the balance of factors, related to the exercise of supplemental jurisdiction, weigh in favor of remand. *Id.* At 357.

Taking into consideration that the plaintiff's federal claim is dismissed early in the litigation process, the court concludes that the balance of factors does not weigh against remand. Therefore, the court declines to exercise supplemental jurisdiction over the state-law claims and plaintiff's Motion to Remand, (doc. 8), will be granted.

**C. Defendants' Motion to Dismiss or, in the Alternative, Motion for Judgment on the Pleadings**

Because the court finds that remand of the remaining state-law claims is appropriate, it will not reach the merits of defendants' Motion to Dismiss or, in the Alternative, Motion for Judgment on the Pleadings, (doc. 10).[2] The Motion will be carried with the case and ruled on by the state court.

## III. CONCLUSION

For the foregoing reasons, the court finds that plaintiff's Motion to Remand and to Voluntarily Dismiss Any Fair Debt Collection Practices Act Claims, (doc. 8), is due to be granted and Defendants' Motion to Dismiss or, in the Alternative, For Judgment on the Pleadings, (doc. 10), will be carried with the case and ruled on by the state court. An

---

[2] Defendants' Motion to Dismiss notes that "[i]n addition to dismissing the FDCPA claims, the plaintiff has gone further to stipulate that none of the defendants' conduct is sufficient to amount to a violation of the FDCPA. This admission is dispositive of every count in the Complaint." (Doc. 10, p. 2.) The defendants' Motion then addresses the legal requirements of each of plaintiff's state law causes of action. Defendants contend that due to plaintiff's concession regarding the FDCPA, plaintiff cannot prove any of his state law causes of action.

The effect of plaintiff's statement that "defendants have not violated any portion of the FDCPA," (doc. 8 at ¶ 3), on his state law causes of action is a matter for the state court to decide.

Order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE**, this the 16th day of August, 2010.

SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE